**UNITED STATES DISTRICT COURT**

**DISTRICT OF MINNESOTA**

---

THE HOME INSURANCE COMPANY, as the successor to The Home Indemnity Company and The City Insurance Company,

Plaintiff,

v.

MARVIN LUMBER & CEDAR COMPANY; MARVIN WINDOWS OF TENNESSEE, INC.; and MARVIN WINDOWS, INC.,

Defendants.

Civil No. 00-2640 (JRT/RLE)

**MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

---

Robert Edwards Salmon, MEAGHER & GEER, 4200 Multifoods Tower, 33 South Sixth Street, Minneapolis, MN, 55402; and Daniel J. Cunningham, TRESSLER, SODERSTROM, MALONEY & PRIESS, Sears Tower, 22nd Floor, 233 S. Wacker Drive, Chicago, IL, 60606-6308, for plaintiff.

Brooks F. Poley, Robert R. Weinstine, Donald J. Brown, David A. Davenport, WINTHROP & WEINSTINE, P.A., 3000 Dain Rauscher Plaza, 60 South Sixth Street, Minneapolis, MN, 55402, for defendants.

Plaintiff Home Insurance Company ("Home") brings this declaratory judgment action against defendants Marvin Lumber & Cedar Company, Marvin Windows of Tennessee, Inc., and Marvin Windows Inc. (hereinafter collectively referred to as "Marvin") seeking a declaration as to its rights and obligations under several insurance

FILED JUN
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD.
DEPUTY CLERK

policies issued to Marvin. Although this action seeks declarations applicable to numerous underlying lawsuits, the instant motion brought by Home seeks a declaration as to only one of those suits: *O'Hara et al. v. Marvin Lumber & Cedar Company and Marvin Windows of Tennessee, Inc.* ("*O'Hara*"). Specifically, Home seeks an order from the Court that it has no duty to indemnify Marvin with regard to the *O'Hara* settlement. For the reasons that follow, the motion is denied.

## BACKGROUND

Marvin is engaged in the business of manufacturing and selling wooden doors and windows. In October 2000, a putative class action lawsuit was filed in Hennepin County District Court against Marvin "on behalf of all owners of wood clad Marvin doors and windows treated with TBTO PILT[1] purchased by Marvin from PPG Industries, Inc. ("PPG"), between 1985 and 1988." First Am. Complaint ¶ 1. The complaint alleged that "the PILT that Marvin used to treat their windows and doors was defective and has resulted and will in the future result in widespread, premature wood rot and deterioration in the frames of all the doors and windows which Marvin manufactured and sold during the period of time in which PILT was employed as Marvin's wood preservative." *Id.* The state court plaintiffs sought to establish a nationwide class and asserted causes of action based upon breach of contract, breach of express warranty, breach of implied warranties, violation of consumer protection statutes, and violation of Minnesota's

[1] PILT is an acronym which stands for "preservation in line treatment." *Id.*

Unlawful Trade Practices Act. As a result of these violations, the state court plaintiffs allege to have suffered damages "to their property" and "direct and consequential damages." As relief, they sought, among other things, an order requiring "defendants to reinstate their previous Full Replacement Policy of complete window and door replacement, including materials, labor and a decorative repair allowance, or, in the alternative, order defendant Marvin to pay damages to plaintiffs in an amount sufficient to reimburse the current full replacement cost of all defective windows and doors, including paying for costs of labor and redecoration." *Id.* at pp. 23-24.

On December 12, 2000, Marvin tendered the *O'Hara* suit to Home for defense and indemnification. In a letter dated January 31, 2001, Home agreed to defend the case pursuant to a reservation of rights. In this letter, Home told Marvin that it did not believe the claims asserted in the *O'Hara* suit were covered under the policies at issue, but stated that it would nonetheless provide for Marvin's defense until such time as a court determines that Home is not obligated to defend Marvin in the *O'Hara* suit. Exh. B. at 3. Specifically, Home stated that it "reserves its right to assert that it is not obligated to defend or indemnify Marvin with regard to the *O'Hara* suit for the following reasons." *Id.* Home expressly cited the "your product" exclusion discussed below as one of the reasons why coverage of the *O'Hara* claims is precluded. *Id.* at 3-5.

On August 6, 2001, Marvin entered into a Settlement Agreement with the *O'Hara* class members. The Settlement Agreement establishes two settlement groups. The first settlement group includes the named plaintiffs and all owners of defective units

manufactured from 1985 to 1989 who contacted the class counsel or lodged a formal complaint on or before August 15, 2001. The second settlement group includes all owners of defective units manufactured from 1985 through 1989 other than those in the first settlement group. The Agreement provides, *inter alia*, that after registering and filing a valid claim, class members may purchase replacement windows and doors at discounted prices and later receive an after-purchase factory rebate. The amount of the discount and rebate received by each class member varies depending on the manufacture date of the products in question, the geographic region in which the class member is located, and whether the class member asserts his or her claim during the peak or off-peak season. Marvin also agreed to pay $800,000 in attorney's fees for the class counsel and to pay up to $300,000 to notify class members of the settlement. On November 27, 2001, the Hennepin County District Court approved the *O'Hara* settlement by Final Judgment and Dismissal, with an accompanying memorandum.

Home now claims it is entitled to a judicial declaration that it has no duty to indemnify Marvin because the "your product" exclusion contained in each of the policies at issue bars coverage. Over a number of years, Home issued nine policies to Marvin. Each of these general liability policies at issue provides, subject to certain terms,

conditions and exclusions, coverage for "damages" which Marvin becomes legally obligated to pay arising out of "property damage" or "bodily injury."[2]

Each of the policies at issue also contains an exclusion applicable to damage to the insured's own products. This exclusion is generally referred to as the "your product" exclusion or the "own product" exclusion. In the first two policies, this exclusion is found at exclusion N. It provides that coverage is excluded for "property damage to the named insured's products arising out of such products or any part of such products." These same policies define "named insured's products" as follows:

---

[2] The insuring clause in the first two policies provides:

> The Company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of
>
> A. bodily injury or
>
> B. property damage
>
> to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.

The insuring clause in the remaining policies provides:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend any "suit" seeking those damages. We may at our discretion investigate any "occurrence" and settle any claim or "suit" that may result.

"Named insured's products" means goods or products manufactured, sold, handled or distributed by the named insured or by others trading under his name, including any container thereof (other than a vehicle) but "named insured's products" shall not include a vending machine or any property other than such contained, rented or located for use of others but not sold.

The "your product" exclusion in the remaining policies appears at exclusion K. It bars coverage for "'property damage' to 'your product' arising out of it or any part of it." These policies define "your products" as follows:

"Your product" means:

a. any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(1) You;

(2) Others trading under you name; or

(3) A person or organization whose business or assets you have acquired; and

b. Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

"Your product" includes:

a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product" and

b. The providing of or failure to provide warnings or instructions.

"Your product" does not include vending machines or other property rented to or located for the use of others but not sold.

## ANALYSIS

### I. Standard of Review

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56. Only disputes over facts that might affect the outcome of the suit under the governing substantive law will properly preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Summary judgment is not appropriate if the dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* Summary judgment is to be granted only where the evidence is such that no reasonable jury could return a verdict for the nonmoving party. *Id.* The moving party bears the burden of bringing forward sufficient evidence to establish that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The nonmoving party is entitled to the benefit of all reasonable inferences to be drawn from the underlying facts in the record. *Vette Co. v. Aetna Casualty & Surety Co.*, 612 F.2d 1076 (8th Cir. 1980).

## II. Duty to Indemnify

Home argues that it owes no duty to indemnify Marvin with regard to the *O'Hara* settlement because each policy issued by Home to Marvin contains a "your product" exclusion which, according to Minnesota law, bars coverage for the repair or replacement of an insured's own products. *Knutson Constr. Co. v. St. Paul Fire & Marine Ins. Co.*, 396 N.W.2d 229, 235 (Minn. 1986); *Carpole's Inc. v. Insurance Co. of N. America,* 544 F. Supp. 6 (D. Minn. 1982); *T.E. Ibberson Co. v. American & Foreign Ins. Co.*, 346 N.W.2d 659 (Minn. Ct. App. 1984).[3] The facts of this case fall squarely within this exclusion, Home argues, because the settlement agreement only obligates Marvin to provide replacement products at discounted prices.

Marvin advances three principal arguments in opposition to Home's motion for partial summary judgment. First, Marvin claims that because Home agreed to defend Marvin in the *O'Hara* action, Home cannot now claim that it does not have a duty to indemnify Marvin. Second, Marvin claims that the source of the claims asserted and settled is not limited or defined by the settlement agreement alone. Rather, it is also necessary to consider the underlying claims asserted in the complaint and through investigation and discovery. In this case, Marvin alleges that the plaintiffs in *O'Hara* did raise claims for consequential property damage and material issues of fact remain as to whether those claims were negotiated as part of the settlement. Finally, Marvin claims that Home incorrectly applies the business risk doctrine.

---

[3] Home argues and Marvin does not dispute that Minnesota law applies for purposes of this motion.

Marvin's first contention that Home is somehow estopped from now arguing that it does not have a duty to indemnify because it agreed to defend Marvin in the *O'Hara* litigation is without merit. Although Home agreed to defend Marvin in the underlying lawsuit, it did so pursuant to an express reservation of rights. In its reservation of rights letter, it plainly told Marvin that it "believes that the *O'Hara* suit is not covered under the policies at issue." Exh. B. at 4. Home went on to specifically cite the "your product" exclusion as a basis, among others, for this conclusion. Leaving no room for ambiguity, Home also stated: "Home reserves its rights to assert that it is not obligated to defend or indemnify Marvin with regard to the *O'Hara* suit." Exh. B at 3. On these facts, it is clear that Home's decision to defend Marvin pursuant to a reservation of rights does not preclude it from now claiming that it has no duty of indemnification.

Marvin's next contention is stronger. As explained above, Marvin contends that the Court's review is not limited to the terms of the settlement agreement, but rather requires review of the underlying claims asserted against Marvin in the *O'Hara* action. In doing so, Marvin claims that the *O'Hara* plaintiffs did, in fact, allege claims for consequential property damage and that, at a minimum, discovery is necessary to determine whether those claims were negotiated as part of the settlement agreement. Home responds that even if the Court considers the allegations made in the underlying pleadings, summary judgment is still appropriate because the *O'Hara* plaintiffs did not allege consequential property damages in the underlying lawsuit.

To determine whether an insurer owes a duty to indemnify another in the context of a settlement agreement, "the question is whether the settlement in the underlying

action included claims for risks [the insurer] agreed to assume." *St. Paul Fire & Marine Ins. Co. v. National Chiropractic Mutual Ins. Co.*, 496 N.W.2d 411, 415-16 (Minn. Ct. App. 1993); *see also Zurich Reinsurance Ltd. v. Canadian Pacific Ltd.*, 613 N.W.2d 760, 764 (Minn. Ct. App. 2000). "In determining what claims were settled, it is appropriate to consider the circumstances and events leading up to the settlement." *St. Paul Fire,* 496 N.W.2d at 415. In this case, Home has a strong claim that many of the claims asserted in *O'Hara* and eventually settled by agreement are covered by the "your product" exclusion and are thus barred from coverage. However, a review of the allegations raised in the amended complaint reveals that several of the claims allege "direct and **consequential** damages." First Am. Complaint at ¶¶ 50, 56, 63, 68 (emphasis added). Marvin has also submitted the affidavit of Gary M. Daniels, Director of Corporate Research for Marvin. Daniels, who is familiar with the claims asserted in the *O'Hara* litigation, states that claims for "other property" were also a part of the *O'Hara* class action. For example, "to the extent moisture infiltrated the home of a class member, claims were presented covering such areas as water damage to interior surfaces and other areas unrelated to the products actually manufactured by Marvin." Daniels Aff. at ¶ 4. As noted above, the complaint in *O'Hara* "speaks in terms of 'damages to their property' and 'direct and consequential damages.'" *Id.* Daniels further emphasizes that plaintiffs' request for relief was not limited to replacement but also included a claim for damages in excess of $70 million. *Id.* at ¶5. The Court also notes that Home's reservation of rights letter recognizes the possibility that consequential damage claims were being asserted in the *O'Hara* action. Exh. B at 5 ("To the extent that there was consequential property damage

(which Home disputes) there may not have been any 'property damage' during the relevant policy periods.").

The Court finds this evidence raises a sufficient question as to whether claims for consequential property damage were asserted by the *O'Hara* plaintiffs and whether such claims were included as claims settled under the agreement. If claims for consequential damages were part of the settlement, some allocation and consequent duty of indemnification for those damages could arise. While the Court expresses some doubt as to the overall viability of this claim, the Court believes Marvin is at least entitled to discovery on the issue. Thus, for all the foregoing reasons, Home's motion is denied.

**ORDER**

Based upon the foregoing, the submissions of the parties, the arguments of counsel and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that plaintiff's motion for partial summary judgment [Docket No. 20] is **DENIED**.

DATED: June 5, 2002
at Minneapolis, Minnesota.

JOHN R. TUNHEIM
United States District Judge

## *Featured Speakers Include:*

**District of Minnesota**

Judge David S. Doty

Judge Donovan W. Frank

Judge Paul A. Magnuson

Judge Ann D. Montgomery

Judge John R. Tunheim

Chief Magistrate Judge Jonathan Lebedoff

Magistrate Judge Arthur J. Boylan

**United States Bankruptcy Court**
**District of Minnesota**

Judge Robert J. Kressel

**Application Pending for 7.5 CLE Credits including 2 Ethics and 1 Bias Credit**

**The Minnesota Chapter of the Federal Bar Association**
c/o Kelly & Berens, P.A.
80 S. 8th Street, Suite 3720
Minneapolis, MN 55402

NON-PROFIT
ORGANIZATION
U.S. POSTAGE
PAID
Minneapolis, MN
Permit No. 2657

**MINNESOTA CHAPTER OF THE FEDERAL BAR ASSOCIATION**

In connection with
The Federal Judiciary

# *28th Annual Federal Court Practice Seminar*

June 19, 2002
8:00 am—5:15 pm

Minneapolis Convention Center
1301 Second Avenue South
Room 208
Minneapolis, MN 55402
(612) 335-6000

## Morning Session:

| | |
|---|---|
| 7:30-8:00 | **Registration** |
| 8:00-8:15 | **Opening Remarks and Welcome,** ***Judge Ann D. Montgomery*** |
| 8:15-9:00 | **Securities Law Issues in the Wake of Enron,** ***Timothy J. Warren (SEC Midwest Regional Office), Professor Niels Schaumann (William Mitchell College of Law), Karl L. Cambronne (Chestnut & Cambronne)*** |
| 9:00-9:45 | **Current Issues in Employment Law,** ***Judge Paul A. Magnuson, Linda L. Holstein (Parsinen Kaplan Rosberg & Gottlieb PA), John R. McDonald (Meagher & Geer, PLLP), Daniel Oberdorfer (Leonard, Street and Deinard)*** |
| 9:45-10:00 | **Morning Break** |
| 10:00-10:45 | **Current Initiatives in the U.S. Attorneys' Office,** ***Tom Heffelfinger (U.S. Attorneys Office)*** |
| 10:45-11:45 | **Discovery Disputes: Professionalism in the Practice of Law?,** ***Judge David S. Doty, Chief Magistrate Judge Jonathan Lebedoff, Magistrate Judge Arthur J. Boylan,*** |
| 11:45-12:45 | **Lunch (Room 211)** |

11:45-12:45 Lunch (Room 211)

## Afternoon Session:

| | |
|---|---|
| 12:45-1:30 | **The Clerk's Office Can Be Your New Best Friend,** ***Celeste Shahidi, Lou Jean Gleason, Mary Lenner, Gertie Simon, Andy Seldon*** |
| 1:30-2:15 | **How to Effectively Teach and Persuade in Patent or Intellectual Property Cases: Why, When and How,** ***Judge Donovan W. Frank, Becky R. Thorson (Robins, Kaplan, Miller & Ciresi), Stephen J. Davidson (Leonard, Street and Deinard)*** |
| 2:15-3:15 | **Issues in the Wake of 9/11: Racial Profiling --** ***Daniel M. Scott (U.S. Federal Public Defenders' Office)*****; Response by the Department of Justice --** ***Tony Brown (U.S. Attorneys Office)*** |
| 3:15:3:30 | **Afternoon Break** |
| 3:30-4:15 | **Update on Technology Tools for Litigating in Federal Court,** ***Judge John R. Tunheim, Judge Robert J. Kressel, Eric J. Magnuson (Rider, Bennett, Egan & Arundel)*** |
| 4:15-5:15 | **Ethics in "Real Life" Practice Situations,** ***Martin A. Cole (Lawyers Professional Responsibility Office)*** |

## *Seminar Registration*

☐ Member $195.00
☐ Non-Member $225.00

Name ______________________

Firm/Employer ______________________

Address ______________________

______________________

Phone ______________________

E-Mail ______________________

**Complete registration form and send with check payable to:**

**Minnesota Chapter, FBA**
**c/o Nancy Gustafson**
**Kelly & Berens, P.A.**
**Suite 3720 IDS Center**
**80 South Eighth Street**
**Minneapolis, Minnesota 55402**

**Not a Member? Join the FBA**

*To apply on-line or to download application form go to http://www.fedbar.org and click on "Join the FBA."*

Questions call: Barbara P. Berens, Vice President, Planning, Minnesota Chapter FBA
(612)-349-6171

**Annual Seminar Planning Committee:**

Kristine M. Boylan, Meagher & Geer, P.L.L.P.

Catherine A. McEnroe, Leonard, Street and Deinard

Celeste M. Shahidi, U.S. Courthouse Minneapolis Building

Susan Nolting, U.S. Department of Justice

Maureen Watz Gornik, Warren E. Burger Federal Building